D. Maimon Kirschenbaum
Lucas C. Buzzard
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, New York 10004
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

SPENCER MARIN,

         **Plaintiff,**

    **v.**

QUINN, EMANUEL, URQUHART &
SULLIVAN, LLP,

         **Defendant.**
-----------------------------------------------------------x

**CASE NO.**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

    The website of Quinn, Emanuel, Urquhart & Sullivan, LLP boasts that "there is no firm like ours." That certainly appears to be the case with respect to its total apathy to the plight of its African-American support staff. While assisting Quinn's attorneys during the notorious Apple v. Samsung trial, these staff members endured horrific racial discrimination, including blatant use of the word "nigger," at the hands of Quinn's Trial Logistics Director, Yllen Cruz. When one such individual (Plaintiff) had the good sense to stand up for himself and his co-workers and bring this to Quinn's attention, Quinn retaliated against him harshly and swiftly, ultimately forcing Plaintiff to leave the firm. Ms. Cruz, on the other hand, continues to enjoy the supervisory position she has held for some thirteen years without facing any consequences.

## JURISDICTION AND VENUE

1.      Plaintiff brings this action against Defendant Quinn, Emanuel, Urquhart & Sullivan, LLP,  alleging claims of race discrimination and retaliation in violation of 42 U.S.C. § 1981, and the New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code §§ 8-101 *et seq.*

2.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this is an action brought under 42 U.S.C. § 1981.  This Court has supplemental jurisdiction over the NYCHRL claims because they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

4.      Defendant Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), a California limited liability partnership, is a 600-lawyer business litigation firm -- the largest in the United States devoted solely to business litigation.

5.      Quinn Emanuel maintains a New York office in midtown Manhattan.

6.      Plaintiff Spencer Marin ("Plaintiff") is an African-American resident of New York who was hired by Defendant as a legal secretary in its New York office in approximately January 2014.

## FACTS

7.      Plaintiff was hired as a legal secretary by Kelly Scott, a Secretary Supervisor.

8.     At the time he was hired, Plaintiff was designated as a "floater" secretary, which meant that he generally covered for absent permanent legal secretaries with the expectation that he would eventually be given the opportunity to become a permanent secretary for a group of the firm's attorneys.

9.     Shortly after he was hired, Plaintiff began to report to Yllen Cruz, Defendant's Trial Logistics Coordinator.  In addition to her role in organizing support staff for the firm's major trials and arbitrations, Ms. Cruz is the secretary to Edward DeFranco, one of the firm's senior partners.

10.     On or about March 23, 2014, Ms. Cruz directed Plaintiff to travel to San Jose, California as one of her assistants for the high-profile trial in the case of *Apple v. Samsung*, in the United States District Court for the Northern District of California (N.D. Cal. Dkt No. C 12-00630).

11.     Defendant's support staff for the *Apple v. Samsung* trial was composed of approximately 10-12 individuals, including Plaintiff.

12.     Most of the support staff worked long hours during the trial and, upon information and belief, had been approved to receive overtime compensation.

13.     Plaintiff worked overtime and earned significant overtime compensation throughout the period he was in San Jose working on the trial.

14.     While overseeing Plaintiff's work in San Jose, Ms. Cruz began repeatedly making racist and homophobic comments to him, about him, and in his presence.

15.     For example, Ms. Cruz frequently asked Plaintiff if he was gay, questioned whether he was really in a relationship with a female (he was), referred to him as a "fairy," and repeatedly told him that she "dreamed" of having a gay assistant.

16.     She also repeatedly joked and made off-color comments about his race, stating that he "was not black enough" and that he was "not really black."  In connection with these offensive "jokes" and comments about his race, Ms. Cruz also inquired whether he had ever been arrested and what his parents' names were.

17.     On or about March 24, 2014, during a communal meal with several members of the  trial support staff including Plaintiff, Ms. Cruz loudly called an African-American employee a "nigger."  Specifically, after a black female support staff member suggested that she was changing her mind about offering some of her food, Ms. Cruz said, "you're a re-nigger."  She then boasted about using that same term before as to another African-American employee.

18.     When the black female support staff member stated that she "did not know how [she felt] about that word," Ms. Cruz ordered her to "just eat, and then you'll feel better."

19.     On or about April 13, 2014, while the trial remained ongoing, Plaintiff met with Ms. Cruz to complain about her offensive racial comments and use of derogatory slurs.  Ms. Cruz denied that she had made any such comments and ordered Plaintiff to leave the trial and fly back to New York shortly thereafter.

20.     The trial continued through the remainder of April, and the remaining New York support staff did not return to Defendant's New York office until approximately May or June of 2014.

21.     After Ms. Cruz ordered Plaintiff to return early to New York following his complaint about her racist and homophobic remarks, he no longer earned the overtime compensation he was receiving while working at the trial.

22.     On or about April 16, 2017, Plaintiff sent an email complaint to Ms. Cruz, copying Ms. Scott and Rebecca Fogler, Defendant's Director of Human Resources at its New

York office.  In his email, Plaintiff recounted Ms. Cruz's racist and homophobic comments made during the trial and stated that he "did not appreciate [her] 'n-word' joke.'"  Plaintiff recounted his hope that he could "get back to work without any further harassment" and suggested that it was best if her were "supervised by someone else" in the future.

23.     Later that day, Plaintiff met with Ms. Fogler, who informed him that Defendant was "sorry" about his experiences at the California trial, and that "this doesn't usually happen."

24.     Ms. Cruz remains employed by Defendant to this date.  Upon information and belief, Defendant failed to take any disciplinary or other action against Ms. Cruz for her shocking and offensive comments.

25.     Shortly after Plaintiff made his complaints, Defendant began a campaign of retaliation against Plaintiff.

26.     For example, Plaintiff repeatedly assigned arduous, time-intensive tasks with short deadlines.  While other legal secretaries were afforded some flexibility with respect to the deadlines for completing such tasks, Plaintiff's deadlines were strictly enforced.

27.     Plaintiff was also never again approved to receive overtime compensation, even though he was given assignments in May 2014 and February 2015 that required significant amounts of work and, upon information and belief, would ordinarily be approved for overtime.

28.     Defendant also began scrutinizing Plaintiff's every action in minute detail in an effort to "catch" him violating its rules.

29.     In June 2014, for example, Plaintiff was required to meet with Ms. Fogler and Deb Kleager, the firm-wide Director of Human Resources, regarding accusations that he had not been emailing Ms. Scott his time records.  Plaintiff was forced into the  humiliating position of

proving that he was sending the required emails by producing them from his computer.  Upon information and belief, other "floater" legal secretaries were not scrutinized to this extent.

30.     In July 2014, Plaintiff was required to attend a meeting with Ms. Scott and the other "floater" secretaries in the New York office at which Ms. Scott announced the "rules" that floater secretaries were required to follow.

31.     In August 2014, Plaintiff was passed over for a permanent legal secretary position, which was given to a legal secretary who had been hired after him.

32.     Upon information and belief, promotion to a permanent legal secretary position was supposed to be based primarily on a legal secretary's seniority with Defendants.

33.     Later that month, Plaintiff was offered what he thought was a permanent legal secretary position.

34.     In November 2014, however, Plaintiff was informed that his new position, although "stationary" (ie. not a "floater" position), was not permanent.

35.     In early February 2015, Plaintiff was again called into a meeting with Ms. Scott and Ms. Fogler, who accused Plaintiff of failing to be present at his desk to sign for packages delivered by Office Services.  Upon information and belief, other legal secretaries who were not present at their desks at time of deliveries could simply collect their packages at the Office Services desk without penalty.

36.     Unable to take the constant scrutiny, and feeling that he was never going to be treated fairly by Defendant, Plaintiff was forced to resign in late February 2015.

37.     On his last day working for Defendant, Ms. Fogler pressured Plaintiff to sign a document indicating that he had resigned voluntarily.  He refused to sign the document.

## FIRST CLAIM FOR RELIEF
### (42 U.S.C. § 1981 – Race Discrimination – Hostile Work Environment)

38.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

39.     In violation of 42 U.S.C. § 1981, Defendant intentionally discriminated against Plaintiff on the basis of his race by subjecting Plaintiff to a racially hostile work environment that was severe or pervasive enough to alter the terms and conditions of his employment.

40.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary damages and non-monetary damages, including, but not limited to, loss of income, emotional distress, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

41.     As a result of Defendant's unlawful conduct, Claimant is entitled to compensatory damages, including but not limited to lost wages; damages for emotional distress; punitive damages; pre- and post-judgment interest; attorneys' fees and costs; and such other legal and equitable relief as just and proper.

## SECOND CLAIM FOR RELIEF
### (42 U.S.C. § 1981 – Retaliation)

42.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

43.     In violation of 42 U.S.C. § 1981, Defendant intentionally retaliated and discriminated against Plaintiff for engaging in the protected activity of opposing and reporting incidents of race discrimination.

44.     Defendant's retaliatory and discriminatory acts included, but were not limited to, loss of overtime compensation, denial of promotions, changes to Plaintiff's schedule and terms

of employment, and increased scrutiny and threats of termination, all of which resulted in the constructive termination of his employment.

45.      As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

46.      As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

47.      Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

48.      As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages; damages for emotional distress; punitive damages; pre- and post-judgment interest; attorneys' fees and costs; and such other legal and equitable relief as just and proper.

### THIRD CLAIM FOR RELIEF
#### (New York City Human Rights Law ("NYCHRL")
#### N.Y.C. Admin. Code § 8-107 – Race Discrimination –
#### Hostile Work Environment)

49.      Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

50.      In violation of the NYCHRL, Defendant intentionally discriminated against Plaintiff on the basis of his race by subjecting Plaintiff to a racially hostile work environment.

51.      As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary damages and non-monetary damages, including, but

not limited to, loss of income, emotional distress, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

52. Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

53. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### (New York City Human Rights Law ("NYCHRL")
### N.Y.C. Admin. Code § 8-107(7) - Retaliation)

54. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

55. In violation of the NYCHRL, Defendant intentionally retaliated and discriminated against Plaintiff for engaging in the protected activity of opposing and reporting incidents of race and gender discrimination/harassment.

56. Defendant's retaliatory and discriminatory acts included, but were not limited to, loss of overtime compensation, denial of promotions, changes to Plaintiff's schedule and terms of employment, and increased scrutiny and threats of termination, all of which resulted in the constructive termination of his employment.

57. Each of the retaliatory and discriminatory acts perpetrated against Plaintiff was reasonably likely to deter a person from engaging in protected activity.

58. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to,

loss of income, including past and future salary.

59.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

60.     Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

61.     As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

(a)     Enter a declaratory judgment that the acts and practices of Defendants complained of herein are in violation of 42 U.S.C. § 1981 and the laws of the City of New York.

(b)     Enjoin and permanently restrain Defendants' violations of 42 U.S.C. § 1981 and the laws of the City of New York.

(d)     Award Plaintiff damages including, but not limited to, lost wages, compensation for her humiliation and emotional distress and suffering, in an amount to be determined at trial, and punitive damages, together with interest thereon from the time of the initial loss until satisfaction of judgment as well as with post-judgment interest thereon;

(e)     Award Plaintiff the costs of this action, together with reasonable attorney's fees;

``

(f)    Grant Plaintiff such other and further relief this Court deems necessary

and proper.

<h1 style="text-align:center">JURY DEMAND</h1>

Plaintiff demands trial by jury on all counts so triable.


Dated: New York, New York
       July 19, 2017


                              Respectfully submitted,

                              JOSEPH & KIRSCHENBAUM LLP

                              By: _____
                                  D. Maimon Kirschenbaum
                                  Lucas C. Buzzard
                                  32 Broadway
                                  Suite 601
                                  New York, NY 10004
                                  Tel: (212) 688-5640
                                  Fax: (212) 688-2548

                                  *Attorneys for Plaintiff*